UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - -x

UNITED STATES OF AMERICA

       -v.-

LOUIS W. ZEHIL,

                Defendant.
- - - - - - - - - - - - - - - - - -x



INFORMATION

07 CRIM 659

## COUNT ONE

(Conspiracy to Commit Securities Fraud)

The United States Attorney charges:

**RELEVANT ENTITIES AND INDIVIDUALS**

1.  At all times relevant to this Information, LOUIS W. ZEHIL, the defendant, was a partner at a law firm (the "Firm") where he specialized in representing small companies seeking to obtain capital through private placement transactions, and to become public through reverse mergers, which are transactions in which a private company is merged into a shell corporation with publicly-traded securities, thereby becoming a publicly-traded company.

2.  Between January 2006 and February 2007, LOUIS W. ZEHIL, the defendant, and the Firm represented the following companies (referred to, collectively, as the "Issuers"), whose common stock is quoted on the OTC-Bulletin Board and is registered with the United States Securities and Exchange Commission ("SEC") pursuant to Section 12(g) of the Securities Exchange Act of 1934, in connection with private placement

transactions:

        a. Gran Tierra Energy, Inc., an oil and gas exploration company;

        b. Foothills Resources, Inc., a company engaged in the exploration and development of oil and natural gas properties;

        c. MMC Energy, Inc., an energy acquisition company;

        d. Alternative Energy Sources, Inc., a company engaged in the business of constructing, owning and operating fuel grade ethanol plants;

        e. Ethanex Energy, Inc., a company engaged in the acquisition, restructuring and operation of renewable energy assets;

        f. GoFish Corp., a website operator; and

        g. Kreido Biofuels, Inc., a builder and operator of biodiesel production facilities.

## THE "PIPE" TRANSACTIONS

    3. The above-described Issuers were small companies seeking to become public through reverse mergers and hoping to obtain capital through private placement transactions. Accordingly, between January 2006 and February 2007, each of the Issuers entered into PIPE[1] private placement transactions (the "PIPE Transactions") at the time they merged with publicly traded shell corporations, or shortly thereafter, to generate financing

---

[1] A "PIPE" is a private investment in securities of a public entity. In PIPE deals a public company typically offers unregistered, restricted shares to investors at a discount to the market price for that entity's publicly traded shares. Investors typically enter into "registration rights agreements" that grant them the right to register the shares in the future for resale.

2

for the newly-merged public company. Investors in these PIPE transactions committed to purchase a certain number of restricted shares from the Issuers at a specified price at a discount to the market price (or expected market price after the reverse merger) and the Issuers agreed, in turn, to file resale registration statements at a later date so that the investors could sell their shares in the public market.

   4. Pursuant to the terms of the PIPE Transactions, the stock issued to the PIPE investors was not freely tradeable because it was not yet registered with the SEC. Consequently, all shares issued in the PIPE Transactions were required to bear restrictive legends until such time as those shares were registered with the SEC and the SEC had declared the registration statements for those securities effective. The PIPE investors typically entered into "registration rights" agreements that allowed them, at a future date, to register the securities they obtained in the PIPE transactions for resale.

## THE FRAUDULENT SCHEME

   5. LOUIS W. ZEHIL, the defendant, invested in each of the PIPE Transactions through nominee entities. ZEHIL, like other investors in each of the PIPE Transactions, entered into subscription agreements for each such transaction, pursuant to which he agreed that the shares he received would be issued with restrictive legends (that would prevent their resale) until such time as the Issuers filed registration statements with the SEC

and the SEC declared the registration statements effective.

   6. As counsel for the Issuers in the PIPE Transactions, LOUIS W. ZEHIL, the defendant, sent opinion letters to the Issuers' stock transfer agents[2] directing the issuance of restricted shares to the PIPE investors. ZEHIL's letters instructed that all of the issued shares should bear restrictive legends <u>except</u> the shares issued to his nominee entities. ZEHIL's letters stated, falsely, that the shares issued to his nominee entities satisfied legal criteria permitting them to be issued without a restrictive legend. As a result, ZEHIL was able to receive shares without restrictive legends.[3] Almost immediately after ZEHIL, through his nominees, obtained these free trading shares of the Issuers' stock, he deposited them in

---

[2] A "stock transfer agent" is an entity that assists corporations in administering transfers of their securities. The stock transfer agent for MMC Energy, Foothills, and GoFish was Continental Stock Transfer & Trust Co., which is located in New York, New York.

[3] For example, ZEHIL provided an opinion letter to Alternative Energy's transfer agent stating that all the shares issued by Alternative Energy to his nominee entity in connection with the PIPE transaction should be issued without a restrictive legend, stating: "The shares . . . have satisfied the holding period required by Rule 144(k) under the Securities Act of 1933, as amended, and the holder of the Warrant is not, and for the past three months has not been, an affiliate of the Company. Accordingly, the shares of Common Stock underlying the Warrant shall be issued without restrictive legend." There was no basis for the statement that the shares issued to the nominee satisfied the holding period required by Rule 144(k). For example, the applicable holding period under Rule 144(k) is two years. Nevertheless, ZEHIL caused his nominee to begin selling shares of Alternative Energy on or about June 27, 2006, just days after purchasing them in the PIPE transaction on June 19, 2006.

securities trading accounts and sold them in the public market. In all cases, he did this before the Issuers had filed registration statements with the SEC. By obtaining stock free of the restrictive legends, ZEHIL was able to sell these shares immediately in the public market at a profit in advance of the other PIPE investors. ZEHIL reaped millions of dollars in profit through these illicit sales.

### Gran Tierra, Inc.

7. In approximately January 2006, Gran Tierra sold 17,572,745 shares to 115 investors in a PIPE transaction. LOUIS W. ZEHIL, the defendant, invested in the transaction through nominees who purchased approximately 750,000 shares of common stock. ZEHIL signed a Subscription Agreement as attorney-in-fact for the nominee entities in connection with this investment which provided that "the investor has no present intention of selling" the securities that would be acquired through the PIPE transaction and that such securities would bear appropriate legends concerning restrictions on transfers.

8. Nevertheless, in January 2006, LOUIS W. ZEHIL, the defendant, and others instructed Gran Tierra's stock transfer agent, Island Stock Transfer, to issue shares to ZEHIL's nominees without a restrictive legend. ZEHIL then deposited the unregistered shares issued to the nominees in his personal securities trading account, and by April 27, 2006, had sold all of these shares.

9. On January 24, 2007, after LOUIS W. ZEHIL, the defendant, had already sold his shares of Gran Tierra stock, Gran Tierra filed a registration statement, on Form SB-2, with the SEC which was amended on February 5, 2007, to register the shares sold in the PIPE transaction. This registration statement, which became effective on February 14, 2007, did not identify LOUIS W. ZEHIL, or his nominees as selling shareholders.

<u>Foothills Resources, Inc.</u>

10. On April 6, 2006, Foothills Resources, Inc. sold 50,974,374 shares to 253 investors in a PIPE transaction. LOUIS W. ZEHIL, the defendant, purchased 1,750,000 shares of common stock through a nominee entity. ZEHIL again signed a Subscription Agreement as attorney-in-fact for his nominee in connection with this investment, which provided that "the investor has no present intention of selling" the securities that would be acquired through the PIPE transaction and that such securities would bear appropriate legends concerning restrictions on transfers. Nevertheless, on April 10, 2006, ZEHIL instructed Foothills' stock transfer agent, Continental Stock Transfer and Trust Company, in New York, New York, to issue shares to ZEHIL's nominee without a restrictive legend. ZEHIL then sold all of these shares by August 17, 2006.

11. On February 6, 2007, Foothills filed a registration statement on Form SB-2 with the SEC to register the shares sold in the PIPE transaction, which falsely identified the

nominee of LOUIS W. ZEHIL, the defendant, as a selling shareholder even though ZEHIL had sold all of the nominee's unregistered 1,750,000 shares by August 17, 2006.

### MMC Energy, Inc.

12. In May 2006, MMC sold 10,631,008 shares to 137 investors in a PIPE transaction.[4] LOUIS W. ZEHIL, the defendant, invested in the transaction through a nominee entity, purchasing 1,000,000 shares of common stock. ZEHIL again signed a Subscription Agreement, as attorney-in-fact for his nominee, which stated that "the investor has no present intention of selling" the securities that would be acquired through the PIPE transaction and that such securities would bear appropriate legends concerning restrictions on transfers. Nevertheless, on or about May 15, 2006, ZEHIL sent an opinion letter and accompanying documents to MMC Energy's transfer agent instructing that the shares issued to his nominee be issued without a restrictive legend. ZEHIL then sold all of these shares by October 5, 2006.

13. On December 27, 2006, MMC filed a Form SB-2 with the SEC which was amended on February 6, 2007, to register the

---

[4] The subscription agreements related to this transaction directed that all notices and communications to the issuer, in New York, New York, be accompanied by copies sent to the Firm at their New York, New York office, to the attention of ZEHIL. Also, investor questionnaires were to be sent to MMC's New York, New York office in connection with the transaction, including the questionnaire signed by ZEHIL, as attorney-in-fact for a nominee entity, which listed the Firm's New York, New York office as the nominee's address.

shares sold in the PIPE transaction. MMC's initial Form SB-2 falsely identified the nominee of LOUIS W. ZEHIL, the defendant, as a selling shareholder even though ZEHIL had sold all of the unregistered 1,000,000 shares he purchased through his nominee by October 5, 2006.

### Alternative Energy Sources, Inc.

14. On June 19, 2006, Alternative Energy Sources, Inc. sold 24,600,000 shares to 86 investors in a PIPE transaction. LOUIS W. ZEHIL, the defendant, invested in the transaction through a nominee entity and purchased 1,001,000 shares of common stock. In connection with his investment, ZEHIL signed a Subscription Agreement which provided, among other things, that "the investor has no present intention of selling" the securities that would be acquired through the PIPE transaction and that such securities would bear appropriate legends concerning restrictions on transfers. On the following day, June 20, 2006, ZEHIL provided an opinion letter and accompanying documents to Signature Stock Transfer, Inc., Alternative Energy's stock transfer agent, instructing that certain shares issued to his nominee be issued without a restrictive legend. ZEHIL then sold all of these shares by September 22, 2006.

15. On October 11, 2006, Alternative Energy filed a Form SB-2 with the SEC, which was amended on December 21, 2006, and February 8, 2007, respectively, to register the shares sold in the PIPE transaction. This registration statement became

effective on February 12, 2007. Alternative Energy's Form SB-2 falsely identified the nominee of LOUIS W. ZEHIL, the defendant, as a selling shareholder even though ZEHIL had sold all of the unregistered 1,001,000 shares he purchased through the nominee by September 22, 2006.

<u>Ethanex Energy, Inc.</u>

16. On September 1, 2006, Ethanex Energy, Inc. sold 41,000,000 shares to 150 investors in a PIPE transaction. LOUIS W. ZEHIL, the defendant, invested in the transaction, purchasing 3,000,000 shares of common stock through two nominees. In connection with the transaction, ZEHIL executed, as attorney-in-fact for his nominees, a Subscription Agreement which stated that "the investor has no present intention of selling" the securities that would be acquired through the PIPE transaction and that such securities would bear appropriate legends concerning restrictions on transfers. Nevertheless, Ethanex's transfer agent was directed to issue shares to ZEHIL's nominees without a restrictive legend. ZEHIL then sold a substantial portion of these shares by November 10, 2006.

17. On January 3, 2007, Ethanex filed a Form SB-2 with the SEC to register the shares sold in the PIPE transaction. The registration statement was not yet effective as of the date on which ZEHIL sold a substantial portion of his shares. Furthermore, Ethanex's Form SB-2 falsely identified one of the nominees for LOUIS W. ZEHIL, the defendant, as a selling

shareholder even though ZEHIL had sold all of the 1,500,000 shares he purchased through that nominee by November 10, 2006.

### GoFish Corp.

18.  On October 27, 2006, GoFish sold 20,000,000 shares to investors in a PIPE transaction.  LOUIS W. ZEHIL, the defendant, invested in the transaction, purchasing 3,000,000 shares of common stock through two nominee entities.  On or about October 27, 2006, Continental Stock Transfer and Trust Company, the stock transfer agent for GoFish, in New York, New York, was instructed that the shares issued to ZEHIL's nominees be issued without a restrictive legend.  By February 14, 2007, ZEHIL caused his nominees to sell over 1,500,000 shares of GoFish stock, all of which were unregistered.  Indeed, GoFish had not yet filed a registration statement with the SEC as of the date on which ZEHIL caused his nominees to sell these shares.

### Kreido Biofuels, Inc.

19.  On January 12, 2007, Kreido Biofuels, Inc. sold 37,037,038 shares to 81 investors in a PIPE transaction.  LOUIS W. ZEHIL, the defendant, invested in the transaction, purchasing 740,740 shares of common stock through two nominee entities. ZEHIL signed a Subscription Agreement in connection with the transaction which stated that "the investor has no present intention of selling" the securities that would be acquired through the PIPE transaction.  Nevertheless, on or about January 15, 2007, the transfer agent was instructed that certain shares

issued to ZEHIL's nominees be issued without a restrictive legend.  Shortly thereafter, ZEHIL sold a portion of these shares.  Kreido did not have an effective registration statement on file with the SEC as of the time ZEHIL sold these shares.

### The Conspiracy

20.  From in or about January 2006 up to and including in or about February 2007, in the Southern District of New York and elsewhere, LOUIS W. ZEHIL, the defendant, and others known and unknown, unlawfully, willfully, and knowingly did combine, conspire, confederate and agree together and with each other to commit offenses against the United States, to wit, securities fraud, in violation of Title 15, United States Code, Sections 78j(b) & 78ff, and Title 17, Code of Federal Regulations, Sections 240.10b-5 and 240.10b5-2.

### Object of the Conspiracy

#### Securities Fraud

21.  It was a part and object of the conspiracy that LOUIS W. ZEHIL, the defendant, and others known and unknown, unlawfully, willfully and knowingly, directly and indirectly, by the use of means and instrumentalities of interstate commerce, and of the mails, and of facilities of national securities exchanges, would and did use and employ, in connection with the purchase and sale of securities, manipulative and deceptive devices and contrivances in violation of Title 17, Code of Federal Regulations, Section 240.10b-5 by: (a) employing

devices, schemes and artifices to defraud; (b) making untrue statements of material fact and omitting to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices and courses of business which operated and would operate as a fraud and deceit upon the purchaser and seller, all in violation of Title 15, United States Code, Sections 78j(b) and 78ff, and Title 17, Code of Federal Regulations, Section 240.10b-5.

### Means and Methods of the Conspiracy

22. Among the means and methods by which LOUIS W. ZEHIL, the defendant, and others known and unknown, would and did carry out the conspiracy were the following:

    a. ZEHIL invested in each of the PIPE Transactions by purchasing shares in the Issuers through nominee entities.

    b. After ZEHIL purchased shares in a particular Issuer, he and others directed the transfer agent to cause shares to be issued to ZEHIL's nominees without a restrictive legend.

    c. Shortly after ZEHIL's nominees received shares in connection with the PIPE Transactions, ZEHIL sold a substantial portion of these unregistered shares under the false pretense that they were registered, freely tradeable shares.

### Overt Acts

23. In furtherance of the conspiracy and to effect the

illegal object thereof, the following overt acts, among others, were committed in the Southern District of New York and elsewhere:

  a. In or about January 2006, LOUIS W. ZEHIL, the defendant, instructed Gran Tierra's stock transfer agent, Island Stock Transfer, to issue restricted shares to ZEHIL's nominees without a restrictive legend.

  b. In or about April 2006, LOUIS W. ZEHIL, the defendant, instructed Foothills' stock transfer agent to issue restricted shares to ZEHIL's nominee without a restrictive legend.

  c. In or about May 2006, LOUIS W. ZEHIL, the defendant, caused MMC Energy's transfer agent to issue restricted shares to his nominee without a restrictive legend.

  d. In or about June 2006, LOUIS W. ZEHIL, the defendant, caused Signature Stock Transfer, Inc., Alternative Energy's stock transfer agent, to issue restricted shares to his nominee without a restrictive legend.

  e. In or about September 2006, LOUIS W. ZEHIL, the defendant, caused Ethanex's transfer agent to issue restricted shares to ZEHIL's nominees without a restrictive legend.

  f. In or about October 2006, LOUIS W. ZEHIL, the defendant, caused Continental Stock Transfer and Trust Company, the stock transfer agent for GoFish, in New York, New York, to

issue restricted shares to ZEHIL's nominees without a restrictive legend.

       g.    In or about January 2007, LOUIS W. ZEHIL, the defendant, caused Kreido Biofuels' stock transfer agent to issue restricted shares to ZEHIL's nominees without a restrictive legend.

(Title 18, United States Code, Section 371.)

## COUNT TWO

### (Securities Fraud)

The United States Attorney further charges:

24.    The allegations contained in paragraphs 1 through 19, 22 and 23 are repeated and realleged as though fully set forth herein.

25.    From in or about April 2006 through in or about August 2006, in the Southern District of New York and elsewhere, LOUIS W. ZEHIL, the defendant, unlawfully, willfully and knowingly, directly and indirectly, by use of the means and instrumentalities of interstate commerce, the mails and the facilities of national securities exchanges, in connection with the purchase and sale of Foothills Resources securities, did use and employ manipulative and deceptive devices and contrivances, in violation of Title 17, Code of Federal Regulations, Section 240.10b-5, by (a) employing devices, schemes and artifices to defraud; (b) making untrue statements of material facts and omitting to state material facts necessary in order to make the

statements made, in the light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices and courses of business which operated and would operate as a fraud and deceit upon persons, to wit, ZEHIL obtained, by fraudulent means, unregistered, restricted securities in Foothills Resources which he then sold under the false pretense that they were registered, freely tradeable shares.

> (Title 15, United States Code, Sections 78j(b) and 78ff; Title 17, Code of Federal Regulations, Section 240.10b-5; and Title 18, United States Code, Section 2).

### FORFEITURE ALLEGATION

26. As a result of committing one or more of the foregoing securities fraud offenses, in violation of Title 15, United States Code, Sections 78j(b) and 78ff; Title 18, United States Code, Section 371; and Title 17, Code of Federal Regulations, Section 240.10b-5, as alleged in Counts One and Two of this Information, LOUIS W. ZEHIL, the defendant, shall forfeit to the Untied States pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code Section 2461, all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of the securities fraud offenses, in an amount not less than approximately $17 million.

### Substitute Assets Provision

27. If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

  (i)  cannot be located upon the exercise of due diligence;

  (ii)  has been transferred or sold to, or deposited with, a third party;

  (iii)  has been placed beyond the jurisdiction of the court;

  (iv)  has been substantially diminished in value; or

  (v)  has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of said defendant up to the value of the forfeitable property described above.

  (Title 15, United States Code, Sections 78j(b), 78ff;
  Title 18, United States Code, Sections 371 and 981;
  Title 21, United States Code, Section 853(p);
  Title 28, United States Code, Section 2461;
  and Title 17, Code of Federal Regulations,
  Sections 240.10b-5 and 240.10b5-2.)

*Michael J. Garcia /DM*
MICHAEL J. GARCIA
United States Attorney

Form No. USA-33s-274 (Ed. 9-25-58)

---

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

---

UNITED STATES

-v-

LOUIS W. ZEHIL

---

**INFORMATION**

<u>MICHAEL J. GARCIA</u>
United States Attorney.

18 U.S.C. 371; 17 U.S.C. 78j(b)
and 78ff; 17 C.F.R. 240.10b-5

---

7/20/07
info filed
~~on~~ Ellis J.